# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| OMAR SIDY MBACKE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13CV937 |
| | ) | |
| ROBERT JONES, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has filed an Answer (Docket Entry 13), a Motion for Summary Judgment (Docket Entry 14), and a Supporting Brief (Docket Entry 15). Petitioner has filed a Response (Docket Entry 16) and a Supporting Brief (Docket Entry 17). Respondent has filed a Reply. (Docket Entry 18.) This matter is now prepared for a ruling.

## Background

On April 24, 2009, Petitioner was convicted after a jury trial in Superior Court, Forsyth County of trafficking cocaine by transportation, carrying a concealed weapon, trafficking cocaine by possession, and possession with intent to sell or deliver cocaine. (Docket Entry 1, §§ 1-6.) He was sentenced to 175 to 219 months of imprisonment. (*Id.*, § 3.) Petitioner did not file a direct appeal but rather filed a MAR on May 1, 2009, requesting that his motion to

suppress be granted and that his charges related to cocaine be dismissed.[1] (Docket Entry 15, Ex. 4 at 44-49.) It was denied on June 16, 2009. (*Id.* at 50-55.)

Petitioner appealed the denial of his MAR to the North Carolina Court of Appeals. That court reversed the denial of Petitioner's MAR on January 4, 2011 in a split decision, *State v. Mbacke*, 209 N.C. App. 35 (2011), and was itself reversed in a six to one decision on January 27, 2012 by the Supreme Court of North Carolina, *State v. Mbacke*, 365 N.C. 403 (2012). Petitioner next sought review by the United States Supreme Court, which denied him further review on October 1, 2012. *State v. Mbacke*, 133 S.C.t. 224 (2012).

Petitioner filed a second MAR in Superior Court, Forsyth County on October 1, 2013, this time through his current federal habeas counsel. (Docket Entry 15, Ex. 9.) Petitioner then filed the instant Petition with this Court on October 23, 2013 (Docket Entry 1) and it was stayed pending Petitioner's exhaustion of his state court remedies. (Docket Entries 3 and 8.) Petitioner's second MAR was denied on November 7, 2013 in Superior Court, Forsyth County. (Docket Entry 15, Ex. 10.)

### Petitioner's Claims

Petitioner contends: (1) the "[t]rial court's denial of [his] Motion for Appropriate Relief violated the Petitioner's rights secured by the Fourth and Fourteenth Amendments"; (2) "[t]rial Counsel Kenneth Tisdale's failure to give Notice of Appeal to any issue other than the denial of the Motion for Appropriate Relief constituted ineffective assistance of counsel"; and (3) appellate counsel's failure "to present al[l] issues in the defendant's Brief in a way . . . [to]

---

[1] Petitioner's Petition asserts that he did file a direct appeal of his judgment of conviction (Docket Entry 1, § 8); however, as explained elsewhere herein, he did not and he instead filed a Motion for Appropriate Relief appealing the denial of his motion to suppress.

2

[e]nsure review constitutes ineffective assistance of counsel." (Docket Entry 1, Grounds One through Four.) As explained below, none of these claims has merit.

## Discussion

Respondent first argues that the Petition is time-barred under 28 U.S.C. § 2244(d). (Docket Entry 15 at 5-8.) Respondent's arguments concerning the timeliness of the Petition involve a number of complicated and somewhat unsettled issues. The other grounds set out in Respondent's summary judgment brief present no such difficulties. Moreover, the limitation period in § 2244(d) is not jurisdictional, so the Court need not consider it before proceeding to other arguments. *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002). Given all of these circumstances, the Court will not address the time bar issue further, but instead will analyze Respondent's other summary judgment arguments.[2]

## Standard of Review

Where, as here, a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is

---

[2] Respondent also contends that Petitioner's second and third grounds for relief are unexhausted and now procedurally barred. (Docket Entry 15 at 17-18.) However, 28 U.S.C. § 2254(b)(2) permits a federal court, in its discretion, to deny a habeas corpus claim on the merits despite the applicant's failure to exhaust available remedies in state court. *Swisher v. True*, 325 F.3d 225, 232-33 (4th Cir. 2002) (affirming district court's discretionary decision to elect to deny habeas corpus relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted"). Here, the undersigned will not belabor the issue of exhaustion and procedural default, but will instead consider petitioner's claim of ineffective assistance on the merits, in an effort to conserve judicial resources.

"contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "Unreasonable" does not mean just "incorrect" or "erroneous" and the Court must judge the reasonableness from an objective standpoint. *Id.* at 409-11. State court factual findings are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Where the claims below were denied on their merits, this standard will apply.

## Factual Background

Here, the Supreme Court of North Carolina recited the factual background in this case as follows:

> [O]n 5 September 2007, Winston-Salem police officers were dispatched to 1412 West Academy Street in response to a 911 call placed by Sala Hall. Hall reported that a black male who was armed with a black handgun, wearing a yellow shirt, and driving a red Ford Escape was parked in his driveway. Hall added that the male had "shot up" his house the previous night. The dispatcher relayed this information to the officers.
>
> Officers Walley and Horsley arrived at the scene at approximately 3:08 p.m., less than six minutes after Hall called 911. They observed a black male (later identified as defendant) who was wearing a yellow shirt and backing a red or maroon Ford Escape out of the driveway at the reported address. The officers exited their patrol cars, drew their service weapons, and moved toward defendant while ordering him to stop his car and put his

4

hands in the air. At about the same time, Officer Woods arrived and blocked the driveway to prevent the Escape's escape.

Defendant initially rested his hands on his vehicle's steering wheel, but then lowered his hands towards his waist. In response, the officers began shouting louder commands to defendant to keep his hands in sight and to exit his vehicle. Defendant raised his hands and stepped out of his car, kicking or bumping the driver's door shut as he emerged. The officers ordered defendant to lie on the ground and then handcuffed him, advising him that while they were not arresting him, they were detaining him because they had received a report that a person matching his description was carrying a weapon. In response to a question from the officers, defendant said that he had a gun in his waistband. Officer Walley lifted defendant's shirt and saw a black handgun. After Officer Woods retrieved the pistol and rendered it safe, defendant was arrested for the offense of carrying a concealed gun.

The officers secured defendant in the back seat of a patrol car, then returned to defendant's Escape and opened the front door on the driver's side. Officer Horsley immediately saw a white brick wrapped in green plastic protruding from beneath the driver's seat where defendant had been sitting. As Officer Horsley was showing Officer Walley what he had found, defendant slipped one hand out of his handcuffs, reached through the partially opened window of the police car in which he had been placed, and attempted to open the vehicle door using the exterior handle. After resecuring defendant, the officers searched the entirety of his car incident to the arrest but found no other contraband. A field test of powdery material from the white brick was positive for cocaine, and a subsequent analysis by the State Bureau of Investigation laboratory determined that the brick consisted of 993.8 grams of cocaine.

*Mbacke*, 365 N.C. at 404-05.

### *Claim One*

Petitioner first contends the trial court's denial of his MAR violated his rights secured by the Fourth and Fourteenth Amendments. (Docket Entry 1, Ground 1.) Petitioner essentially contends that the Supreme Court of North Carolina's resolution of this case is at

5

odds with *Arizona v. Gant*. (*Id.*; Docket Entry 17 at 2.) It is therefore instructive to review the analysis of the Supreme Court of North Carolina in this case, which, in pertinent part, was as follows:

> Our review necessarily begins with a discussion of *Arizona v. Gant*, in which the Supreme Court considered whether searching an automobile incident to arrest violated the defendant driver's Fourth Amendment rights when he had been arrested for a traffic offense only and had no access to his car at the time of the search. 556 U.S. at 335-37, 129 S.Ct. at 1714-15, 173 L.Ed.2d at 491-92. Gant's car was not searched until he had been arrested, handcuffed, and locked in the back of a patrol car. *Id.* at 336-37, 129 S.Ct. at 1715, 173 L.Ed.2d at 492. Although the officers had no apparent reason to suspect at the time of the search that Gant's vehicle contained any contraband, they found cocaine and a weapon in the car. *Id.* at 336-37, 129 S.Ct. at 1715, 173 L.Ed.2d at 492.
>
> The Supreme Court's analysis of the propriety of the search focused on its opinion in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), in which the Court held that an officer may search the passenger area of a vehicle incident to the arrest of the driver. *Gant*, 556 U.S. at 337-51, 129 S.Ct. at 1716-23, 173 L.Ed.2d at 493-501 (citing *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 774-75). The majority in *Gant* noted that the Court in *Belton* had reasoned that such an approach was consistent with the purposes set out in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), of ensuring both police officer safety and the preservation of evidence. *Gant*, 556 U.S. at 337-42, 129 S.Ct. at 1716-18, 173 L.Ed.2d at 493-95. However, the Supreme Court observed in *Gant* that many lower courts had interpreted *Belton* expansively "to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Id.* at 341, 129 S.Ct. at 1718, 173 L.Ed.2d at 495. The majority in *Gant* concluded that such broad readings undermined *Belton*'s and *Chimel*'s dual rationales. *Id.* at 343-44, 129 S.Ct. at 1719, 173 L.Ed.2d at 496.
>
> The Court repudiated these interpretations and limited *Belton*'s application by holding that when a defendant is arrested, the defendant's car can be searched "only when the arrestee is

6

unsecured and within reaching distance of the passenger compartment at the time of the search" or "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Id.* at 343-44, 129 S.Ct. at 1719, 173 L.Ed.2d at 496 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S.Ct. 2127, 2137, 158 L.Ed.2d 905, 920 (2004) (Scalia & Ginsburg, JJ., concurring in the judgment)).

In its conclusions of law, the trial court here found that "[t]here has been no change in circumstances or in the Law to warrant the Court setting aside its ruling on [defendant's] Pre-trial Motion" because "[t]he main issue of contention in the Pre-trial Motion to Suppress was whether the Winston-Salem Police officers involved had a sufficient articulable and reasonable suspicion to stop the Defendant's vehicle. This issue was not affected by the Supreme Court's ruling in *Arizona v. Gant*." This conclusion by the trial court remains unchallenged.

The trial court then turned its attention to the applicability of *Gant* to defendant's motion for appropriate relief and found that defendant had been secured in a police vehicle and was not within reaching distance of the passenger compartment of his car when officers searched his vehicle. Thus, no search was permitted under the first alternative set out in *Gant*. However, as to *Gant*'s second prong, the trial court found that defendant had been arrested for carrying a concealed gun and that the officers had reason to believe that evidence of the offense of arrest, such as "other firearms, gun boxes, holsters, ammunition, spent shell casings and other indicia of ownership of the firearm" "would be located in the interior of the Defendant's vehicle." Concluding that *Gant* did not foreclose the search of a vehicle pursuant to an arrest under those circumstances, the trial court denied the motion.

The Supreme Court subsequently has left no doubt that *Gant* applies to the case at bar because defendant's case was " 'not yet final' " when *Gant* was decided. *Davis v. United States*, 564 U.S. ___, ___, 131 S.Ct. 2419, 2430-31, 180 L.Ed.2d 285, 298 (2011) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987)) (stating that *Gant* applies retroactively to such cases). Accordingly, we must consider whether the trial court properly applied the holding in *Gant* to the evidence at bar when it denied defendant's motion for appropriate relief.

7

Despite defendant's apparent attempt to escape the police car in which he had been confined, the trial court was correct in finding that *Gant*'s first prong did not permit a search because defendant was neither unsecured nor within reaching distance of the passenger compartment of his car at the time of the search. Our inquiry must then focus on whether it was reasonable for the police to believe that defendant's vehicle might contain evidence of the crime of arrest. *See Gant*, 556 U.S. at 333, 344, 129 S.Ct. at 1714, 1719, 173 L.Ed.2d at 491, 496-97.

Because the Supreme Court did not define the term "reasonable to believe," some analysis is appropriate to provide guidance to law enforcement personnel who must apply *Gant* in their daily work. Despite the suggestion in *United States v. Williams*, 616 F.3d 760, 764-65 (8th Cir. 2010), *cert. denied*, ____ U.S. ____, 131 S.Ct. 1548, 179 L.Ed.2d 310 (2011), that "probable cause" and "reasonable to believe" are equivalent concepts, we are satisfied that the reasonable to believe standard enunciated in *Gant* establishes a threshold lower than probable cause. *See United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir.) ("Presumably, the reasonable to believe' standard requires less than probable cause, because otherwise *Gant*'s evidentiary rationale would merely duplicate the automobile exception,' which the Court [in *Gant* ] specifically identified as a distinct exception to the warrant requirement."), *cert. denied*, ____ U.S. ____, 131 S.Ct. 93, 178 L.Ed.2d 58 (2010).

Instead, we conclude that the "reasonable to believe" standard set out in *Gant* parallels the objective "reasonable suspicion" standard sufficient to justify a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). Although the rationales for the two standards differ somewhat, in that *Gant* addresses officer safety and evidence preservation, *Gant*, 556 U.S. at 336-38, 343-44, 129 S.Ct. at 1715-16, 1719, 173 L.Ed.2d at 492-93, 496-97, while *Terry* addresses "effective crime prevention and detection" along with officer and public safety, *Terry*, 392 U.S. at 22-24, 88 S.Ct. at 1880-81, 20 L.Ed.2d at 906-08, we believe the underlying concept of a reasonable articulable suspicion discussed in *Terry*, *id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906, is readily adaptable to a scenario in which a search of a vehicle is contemplated after the occupants have been arrested and detained. *See also United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110, 117-18

8

(1983) (explicitly adopting the "reasonable, articulable suspicion" standard implied in *Terry*). In addition, law enforcement officers and courts have worked with the *Terry* standard for decades, making application of *Gant*'s similar objective standard a straightforward matter. Accordingly, we hold that when investigators have a reasonable and articulable basis to believe that evidence of the offense of arrest might be found in a suspect's vehicle after the occupants have been removed and secured, the investigators are permitted to conduct a search of that vehicle.

Here, defendant was arrested for the offense of carrying a concealed gun. The arrest was based upon defendant's disclosure that the weapon was under his shirt. Other circumstances detailed above, such as the report of defendant's actions the night before and defendant's furtive behavior when confronted by officers, support a finding that it was reasonable to believe additional evidence of the offense of arrest could be found in defendant's vehicle. Accordingly, the search was permissible under *Gant*, and the trial court properly denied defendant's motion for appropriate relief.

Our holding is consistent with the results reached by other courts. Although we are not bound by these cases, we consider their analyses informative. *See State v. Warren*, 252 N.C. 690, 696, 114 S.E.2d 660, 666 (1960) (noting that North Carolina is "not bound by the decisions of the Courts of the other States," but that "overwhelming authority" in favor of a certain interpretation of law is "highly persuasive"). In general, courts examining an offense involving weapons have inferred that the offense, by its nature, ordinarily makes it reasonable to believe the defendant's car will contain evidence of that offense, so that searching a defendant's car incident to an arrest for a weapons offense is almost always consistent with the Fourth Amendment. *See, e.g.*, *United States v. Rochelle*, 422 Fed. Appx. 275, 277 (4th Cir.) (unpublished per curiam decision) (finding that officers had reason to believe the defendant's vehicle contained evidence of the offense of arrest, unlawful firearms possession), *cert. denied*, ___ U.S. ___, 132 S.Ct. 438, 181 L.Ed.2d 285 (2011); *Vinton*, 594 F.3d at 25-26 (same after arrest for possession of a prohibited weapon); *United States v. Leak*, No. 3:09-cr-81-W, 2010 WL 1418227, at *5 (W.D.N.C. Apr. 5, 2010) (same after arrest for both driving with a suspended license and carrying a concealed weapon); *United States v. Wade*, No. 09-462, 2010 WL 1254263, at

9

*2-3, *5 (E.D.Pa. Mar. 29, 2010) (finding that the officer had reason to believe the defendant's jacket, which the defendant had left in the car in which he had been riding when the police approached, might contain additional evidence of the offense of arrest, illegal possession of a firearm), *aff'd on other grounds*, 451 Fed. Appx. 173, No. 10-3847, 2011 WL 5524995 (3d Cir. Nov. 14, 2011) (unpublished); *People v. Osborne*, 96 Cal.Rptr.3d 696, 698, 705, 175 Cal.App.4th 1052, 1056-57, 1065 (concluding that officers had reason to believe the car the defendant appeared to be burglarizing at the time of his apprehension would contain evidence relating to the offense of arrest, illegal possession of a firearm), *rev. denied*, No. S175724, 2009 Cal. LEXIS 11474 (Oct. 28, 2009). *But see United States v. Brunick*, 374 Fed. Appx. 714, 716 (9th Cir.) (unpublished) (concluding that the defendant's arrest for carrying a concealed weapon, a knife, did not give rise to a reason to believe evidence would be found in the defendant's vehicle because there was no likelihood of finding additional evidence related to the offense for which the defendant was arrested; however, vehicle search allowed under inventory search exception), *cert. denied*, ___ U.S. ___, 131 S.Ct. 355, 178 L.Ed.2d 230 (2010).

Even though we conclude that the search of defendant's vehicle was constitutionally permissible, we stress that we are not holding that an arrest for carrying a concealed weapon is *ipso facto* an occasion that justifies the search of a vehicle. We believe that the "reasonable to believe" standard required by Gant will not routinely be based on the nature or type of the offense of arrest and that the circumstances of each case ordinarily will determine the propriety of any vehicular searches conducted incident to an arrest.

The decision of the Court of Appeals is reversed, and that court is instructed to reinstate the trial court's denial of defendant's motion for appropriate relief.

*Mbacke*, 365 N.C. at 406-11.[3]

---

[3] The single dissenting justice in this case essentially determined that there was (1) no reason to believe the vehicle contained evidence relevant to the crime of carrying a concealed weapon, (2) it was improper to equate the standards from *Terry* and *Gant*. *Mbacke*, 365 N.C. at 411-14. Petitioner would have this Court adopt the reasoning of the dissent. (Docket Entry 17 at 3-5.) Nevertheless, the Court concludes that the decision of the majority does not satisfy the standard for federal habeas relief.

Here, Petitioner's claim fails for two reasons. First, Petitioner's Fourth Amendment search and seizure claim is barred from federal habeas review. This is because Petitioner raised his Fourth Amendment issue in his initial MAR, with the North Carolina Court of Appeals, and with the Supreme Court of North Carolina. Petitioner has had an opportunity for full and fair[4] litigation of his Fourth Amendment claim. *See Stone v. Powell*, 428 U.S. 465, 481-82 (1976).[5]

Second, the Court finds that the thorough reasoning of the Supreme Court of North Carolina, which clearly adjudicated this claim on the merits and affirmed the trial court's order, does not entitle Petitioner to relief in a federal habeas proceeding. This is because the decision to reinstate the trial court's denial of Petitioner's first MAR was not contrary to (or did not involve an unreasonable application of) clearly established federal law as set out by the United States Supreme Court, namely the holdings announced in the Supreme Court's opinion in *Arizona v. Gant*, 556 U.S. 332 (2009) and *Terry v. Ohio*, 392 U.S. 1 (1968). The Court further

---

[4] The United States Court of Appeals for the Fourth Circuit has previously recognized that North Carolina's statutory scheme governing the litigation of motions to suppress, *see* N.C.G.S. §§ 15A-971-980, establishes "an opportunity for the full and fair litigation" of Fourth Amendment claims. *Sallie v. State of North Carolina*, 587 F.2d 636, 639 (4th Cir. 1978).

[5] *See also Wright v. West*, 505 U.S. 277, 293 (1992) ("We have also held . . . that claims under *Mapp* [evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the state courts have provided a full and fair opportunity to litigate them at trial or on direct review."); *Mueller v. Angelone*, 181 F.3d 557, 570 n. 8 (4th Cir. 1999) (acknowledging *Stone v. Powell* rule that federal habeas courts decline to review state court Fourth Amendment determinations); *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner has an opportunity to litigate those claims in state court."); *Edwards v. Jackson*, No. 3:08-cv-584-RJC, 2012 WL 137413, *4 (W.D.N.C. Jan. 18, 2012) ("Petitioner was afforded a full and fair opportunity to raise any Fourth Amendment search and seizure or unlawful arrest claims he wished to raise at trial and on appeal, but he did not do so. Therefore, his current Fourth Amendment search and seizure claim and unlawful arrest claims are both barred from federal habeas review.").

finds that the state court's decision was not based on an unreasonable application of the facts of Petitioner's case. 28 U.S.C. § 2254(d)(2). For the foregoing reasons, this claim should be denied. *See, e.g., Steele v. Ball*, No. 3:13-CV-509-FDW, 2014 WL 3735144, at *1 (W.D.N.C. July 29, 2014) *appeal dismissed sub nom. Steele v. Hunt*, 589 F. App'x 132 (4th Cir. 2014).

### *Claim Two*

Petitioner next contends that his trial counsel's failure to give notice of appeal to any issue other than the denial of the initial MAR constituted ineffective assistance of counsel. (Docket Entry 1, Ground 2.) Petitioner raised this issue in his October 1, 2013 second MAR and it was denied. (Docket Entry 15, Exs. 9-10.)

To prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he suffered prejudice as result. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Unsupported, conclusory allegations do not entitle Petitioner to even a hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). Prejudice requires a showing of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have differed. *Strickland*, 466 U.S. at 694.

This argument fails if for no other reason than Petitioner does not set forth what other issues counsel should have noticed or raised on appeal. This alone defeats his claim. As noted, unsupported, conclusory allegations do not entitle Petitioner to even a hearing. *See Nickerson*, 971 F.2d at 1136. Additionally, to the extent Petitioner seeks to reargue the substance of his

12

second MAR in this Court on this issue, it still fails. Specifically, Petitioner argued in his second MAR that because trial counsel failed to properly give notice of appeal of any issue other than the denial of his initial MAR, the state appellate court was precluded from reviewing the denial of his motion to suppress and three arguments of improperly admitted evidence, and could instead only review the MAR denial.[6] (Docket Entry 15, Ex. 9 at 3-6.)

However, Petitioner has failed to demonstrate any meaningful likelihood that had these issues been properly presented to the North Carolina Court of Appeals they would have been successful. Petitioner is apparently referencing four arguments. First, that "the trial court erred in denying Mr. Mbacke's Motion to Suppress on the ground that Mr. Mbacke was seized and arrested without reasonable suspicion or probable cause to believe he had committed a crime." (Docket Entry 15, Ex. 4 at 63.) Second, that "the trial court erred in denying the defense's Motion *in Limine* and allowing the State to introduce evidence pursuant to N.C. R. Evid. 404(b) on the ground that such evidence was inadmissible under Rule 404(b)." (*Id.*) Third, "the trial court erred in denying the defense's Motion *in Limine* to exclude evidence of items seized pursuant to a warrant for a search of Mr. Mbacke's residence on the ground that such evidence was not relevant and, even if it were relevant, it was unduly prejudicial such that the prejudice outweighed its probative value." (*Id.*) Fourth, that "[t]he trial court erred in overruling the defense's objection and allowing into evidence a receipt for the use of a rental

---

[6] *See Mbacke*, 209 N.C. App. at 37 ("Defendant brings forth arguments that the trial court erred in: (1) denying his motion to suppress, (2) denying his motions *in limine* at trial, and (3) denying his motion for appropriate relief. However, Defendant gave no written or oral notice of appeal from the judgment entered at the conclusion of his trial or from the trial court's order denying his motion to suppress. As noted above, Defendant appealed only from the trial court's denial of his motion for appropriate relief. Therefore, Defendant's assignments of error and arguments regarding errors committed by the trial court during his trial, and in denying his motion to suppress, are not properly before us.").

car on the ground that the information on the receipt constituted hearsay." (*Id.* at 63-64.) As explained below, the Court concludes that none of these claims were viable.

## A. Motion to Suppress

First, it was proper for the trial court to deny Petitioner's motion to suppress. As noted above, in this case, Police responded to a crime in progress and a request for immediate police protection. More specifically, as noted, Winston-Salem Police received a 911 call from Sala Hall, advising that the man who had shot up his house the night before was back, with a gun, and that he was wearing a yellow shirt and driving a red Ford Escape. Officer Walley arrived six minutes after the call was received. The information about the man with the gun was confirmed when Walley and the other officers arrived on the scene, with the exception of the allegations regarding the night before. The information provided by the caller in this particular case provided the indicia of reliability, together with the requisite attendant circumstances, including officers' observations on arrival, that satisfy the reasonable suspicion standards. Specifically, law enforcement was justified in making an investigatory stop of the vehicle as it left the driveway of the residence and for frisking Petitioner for weapons, at which point a firearm was discovered and Petitioner was arrested. *Terry v. Ohio*, 392 U.S. 1 (1968). And, as explained elsewhere in this Recommendation, the search by law enforcement of Petitioner's vehicle, which yielded the cocaine, was not inconsistent with the holding in *Arizona v. Gant*. There is no reason to believe that presentation of this claim to the North Carolina Court of Appeals would have changed the outcome of this case.

## B. Evidence Seized from Petitioner's Home

Second, evidence seized from Petitioner's home was also admissible at trial. More specifically, after Petitioner's arrest, law enforcement searched his home after securing a warrant. (Docket Entry 15, Ex. 11 at 336-338.) Law enforcement seized, in pertinent part, ammunition, firearms, and a set of digital scales. (*Id.*) On *voir dire*, Officer Stewart, one of the officers who assisted in the search and an individual with extensive experience in narcotics investigations, testified that "drug dealers often use digital scale" "[t]o measure out the product that they're selling." (*Id.* at 351.) Officer Stewart stated further that "drug dealers often carry guns" as well. (*Id.*)

The state then made its case to the trial court why the evidence was admissible and, in turn, defense counsel contended that it was not. (*Id.* at 353-57.) The trial court then made the following oral ruling:

> As to the issue of relevancy and proof, the court will find that the scales seized would clearly come in, given the charges in this case. The nine-millimeter ammunition would certainly come in. The other documents that would indicate possession or interest in the residence would certainly come in.
>
> At this point, given the posture of the case, the court would find that the other handguns, particularly, the other nine-millimeter handgun, would be relevant and would find that it would be more probative than prejudicial, given the charges that are pending before this jury.
>
> So at this stage, given the current posture of the case, the court would overrule the objection and allow the introduction of the evidence seized at the residence.

15

(*Id.* at 357-58.) The state then presented all of the abovementioned evidence to the jury and Officer Stewart also testified that "drug dealers often carry firearms" and "drug dealers use . . . digital scales" for "weighing out the product." (*Id.* at 360-382; *id.* at 378.)

There was no error in the admission of this evidence and, consequently, Petitioner did not lose a viable claim before the North Carolina Court of Appeals through counsel's alleged ineffective assistance of counsel. More specifically, first, Rule 401 of the North Carolina Rules of Evidence provides that "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, 401. It is essentially identical to Rule 401 of the Federal Rules of Evidence. *Id.*, Editor's Notes; Fed. R. Evid. 401. Second, Rule 403 of the North Carolina Rules of Evidence provides that "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, 403. It is essentially identical to Rule 403 of the Federal Rules of Evidence. *Id.*, Editor's Notes; Fed. R. Evid. 403.

Here, the trial court was well within its discretionary authority in admitting the firearms, ammunition, and digital scales mentioned above. As noted, law enforcement testified that "drug dealers" frequently use digital scales to measure their product and further testified that they were also frequently armed. Petitioner was found with two pounds of cocaine and a concealed firearm. He was charged with trafficking cocaine by transportation, carrying a concealed weapon, trafficking cocaine by possession, and possession with intent to sell or

16

deliver cocaine. The Court is not persuaded that this evidence is irrelevant to the charged crimes, nor is the Court persuaded that the probative value of this evidence was substantially outweighed by a danger of unfair prejudice.[7] Had this claim been presented to the North Carolina Court of Appeals, there is no meaningful reason to believe it would have succeeded.

### C. Petitioner's Georgia Arrest

Third, prior to trial, Petitioner filed a motion *in limine* requesting that the trial court prohibit the state from introducing certain evidence or testimony pursuant to N.C. R. Evid. 401, 403, and 404(b). (Docket Entry 15, Ex. 4 at 32-33.) The evidence and testimony in question related to "a drug-related incident in Franklin County Georgia, on or about November 16, 2008," where Petitioner "was arrested in the State of Georgia," "attempted to evade police," made certain statements to law enforcement, and was found with "cocaine . . . in the vehicle." (*Id.* at 32.) At trial, the court took evidence on the matter outside of the presence of the jury, heard argument by the parties, and reached the following conclusions. It found that the *voir dire* testimony was that on June 20, 2008, in Franklin County, Georgia, law enforcement received a phone call about two men fighting in the roadway of Interstate 85.

---

[7] *See State v. Huerta*, 727 S.E.2d 881, 888-89 (2012) (citing *State v. Boyd*, 177 N.C.App. 165, 171-72, (2006) (noting that "as a practical matter, firearms are frequently involved for protection in the illegal drug trade"); *United States v. Williams*, 548 F.3d 311, 316 (4th Cir. 2008) (observing that digital scales are "commonly used in drug distribution"); *United States v. Carter*, 669 F.3d 411, 420 (4th Cir. 2012); *United States v. Ricks*, 882 F.2d 885, 892 (4th Cir. 1989) (firearms relevant in drug cases); *United States v. Collazo*, 732 F.2d 1200, 1206 (4th Cir. 1984) (same); *United States v. Blackman*, 897 F.2d 309, 317 (8th Cir. 1990) (firearm seized in defendant's apartment relevant to the issue of intent to distribute cocaine); *United States v. Payne*, 805 F.2d 1062, 1065 (D.C. Cir. 1986) (guns admissible as evidence of tools of the trade in drug conspiracies); *State v. Teasley*, 82 N.C. App. 150, 160-61 (1986) (concluding that "digital scales," among other evidence seized, was "relevant to the crime of trafficking in cocaine in that they tended to show that defendant knowingly possessed cocaine and was trafficking in it [and] perceive[ing] no 'danger of unfair prejudice' that substantially outweighed the probative value of these exhibits.").

(Docket Entry 15, Ex. 11 at 197.) Not finding this scene upon arrival, the officers then received another dispatch that one of the men might be at a nearby gas station. (*Id.*)

At the gas station, the officers found a man by the name of Fidele Tchouako sweating and breathing hard while lying inside the door. (*Id.*) At some point Petitioner came in the gas station and told law enforcement that Tchouako was "crazy." (*Id.*) Petitioner was taken back outside while law enforcement determined what was happening. (*Id.* at 197-98.) Tchouako was explaining that he was traveling from Atlanta to North Carolina to visit his cousin in North Carolina, when the officer saw white residue around his mouth. (*Id.* at 198.) The officer asked whether there were drugs in the vehicle, and though he received no response from Tchouako, he noticed that Petitioner, who was outside, had begun raising his voice to the officers outside. (*Id.*) Petitioner began walking to a white Crown Victoria, which he had been gassing up earlier. (*Id.*) Concerned there were drugs in the car, law enforcement decided not to permit Petitioner back into the vehicle. (*Id.*) Petitioner ran and a foot chase ensued. (*Id.*)

Meanwhile, one officer put Tchouako in his patrol vehicle, and by the time he did this, the other officers had brought Petitioner back to the scene. (*Id.* at 199.) Shortly thereafter, Petitioner was placed under arrest for delaying or obstructing an officer. (*Id.*) The officers, in a search incident to arrest, found an object on the back seat on the passenger's side in a white plastic bag. (*Id.*) Inside there was a cellophane-type package wrapped in red duct tape with a white powdery substance, that was later determined to be a pound of cocaine. (*Id.*) Another officer testified to substantially the same information as repeated in the preceding paragraphs. (*Id.* at 199-201.)

The trial court next stated the following:

Based upon these findings, the court will find that the state is attempting to introduce this evidence of a subsequent act under 404(b), arguing that it should be admitted for the purpose of knowledge, intent, absence of mistake, common plan, scheme, or mode of operation.

The court, in looking at Rule 404(b) will find, as has been found many times, that it is a general rule of inclusion, however, with certain limitations.

There must be similarities between the events, there must be temporal proximity, and the evidence must be more probative than prejudicial of some fact other than the defendant's propensity to act in conformity with some character trait.

In regards to similarity, the court will find in each case a large amount of cocaine. In one case 498 grams and in another case in excess of 900 grams were located, that in each case it was located in a passenger car in the passenger area. In each case the defendant exercised either exclusive or some degree of control over the vehicle at some time in the officer's presence.

The court will note that, in addition to the fact that the items both turned out to be cocaine, that both were extensive in their volume, in that one was in excess of 900 grams and the other, 498 grams.

The court will note the defendant's position, that they certainly did take place in different places, one in Georgia and one in North Carolina, and that there is unknown purity because of the lab in North Carolina not conducting a purity test.

The court will also note that there was no weapon seized in the Georgia event; that, instead of being located under the driver's seat and in the front driver's floorboard, it was located in the back seat in the Georgia event and that, to some extent, the packaging was slightly different.

The court, however, will find that there are more similarities than differences between the two events, and for purposes of similarity the court will find that the similarities are sufficient to meet the test as provided in Rule 404(b) and will now move to temporal proximity.

19

The evidence would show that the events on trial took place on or about September the 5th, 2007, and that the events in the Georgia case, or subsequent activity, took place June the 20th, 2008.

The court will note there's an approximately 10-month lapse of time and that the defendant was apparently out on pretrial release if he was in fact present in Georgia during the time that this happened.

The court will find after a review of numerous cases, which it has done several time before, that the passage of 10 months is not so much time as to make it not temporally proximate. And the court will find that 10 months in fact would be temporally proximate for a drug-trafficking event and would find that it meets the test of temporal proximity.

The court will note, again going back now to the standards, having found similarity and temporal proximity, that there are standards that the evidence must meet, which were nicely summed up on *State versus Peterson*, 179 North Carolina Court of Appeals 437.

In that case that court found that the evidence must be offered for a proper purpose; second, that the evidence must be relevant; third, that the probative value must not be substantially outweighed by its potential unfair prejudice; and, fourth, that, upon request, the defendant is entitled to an instruction that the jury consider the evidence for the proper purpose for which it may be admitted.

As for the proper purpose, the court will note that the defendant stands charged with trafficking in cocaine by possession and trafficking in cocaine by transportation, as well as possession with the intent to sell and deliver cocaine.

The court will note that one of the elements the state must prove is intent and one of the elements they must prove is also knowledge. The court will find that this subsequent event is relevant to proving knowledge and intent.

The state further contends common plan or scheme; that is, moving large amounts of cocaine about in passenger vehicles. The court will find that it certainly could be relevant to that.

> Finally, the state would contend absence of mistake. And the court will note - certainly the defendant is not bound by this, but in the opening statements the indications were that their contention would be that the cocaine in the case in chief was placed there by another. And to that extent it would certainly be relevant to absence of mistake.
>
> The court will then move on to consider whether or not the evidence is relevant, and the court would find that it would be relevant for those purposes.
>
> The court then, moving to Rule 403, would find that the evidence would not by [sic] substantially outweighed by any unfair prejudice. The court would find that it's more probative than prejudicial, particularly given the requirements that the state prove knowledge as to the drug offenses.
>
> So based upon all these findings, the court will find that the evidence should be received for the limited purpose under 404(b) of showing the defendant's knowledge, intent, absence of mistake, or common plan or scheme.

(*Id.* at 201-205.) The evidence of this arrest, as described above, along with a limiting instruction that it only be considered for the limited purposes mentioned above, was later presented to the jury. (*Id.* at 207-243.)

Had this argument been presented to the North Carolina Court of Appeals, it would not have been successful. This is because the trial court did not reversibly err in its conclusions and its application of the relevant legal standard. In North Carolina, Rule 404 governs the relevance and admissibility of character evidence. Specifically, Rule 404(b) provides that other crimes are not admissible to prove the character of a person in order to show that he acted in conformity therewith. N.C. Gen. Stat. § 8C-1, 404(b). Such evidence, however, may be admitted for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* This rule is identical

21

to Rule 404 of the Federal Rules of Evidence, except for the addition of the word "entrapment" in the last sentence of subdivision (b). *Id.*, Editor's Notes; Fed. R. Evid. 404(b).

A determination whether evidence was properly admitted under Rule 404(b) involves a three-step test. The first inquiry is whether the evidence relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried. *State Coffey*, 326 N.C. 268, 278 (1990). The second inquiry is whether that purpose is relevant to an issue material to the pending case. *State v. Anderson*, 350 N.C. 152, 175 (1999). The third inquiry is whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *State v. Summers*, 177 N.C. App. 691, 697 (2006). "The admissibility of evidence under [Rule 404(b) ] is [also] guided by two further constraints— similarity and temporal proximity." *State v. Lynch*, 334 N.C. 402, 412 (1993). *See also generally Huddleston v. United States*, 485 U.S. 681 (1988).

Here, in light of the trial court's decision, which essentially speaks for itself, there is no reason to believe the North Carolina Court of Appeals would have concluded that it erred.[8] Moreover, even if the North Carolina Court of Appeals found that the trial court erred, it

---

[8] *See United States v. Moody*, 564 F.3d 754 (5th Cir. 2009) (concluding, in drug distribution prosecution, that there was no error in finding that the probative value of testimony of police officers about defendant's prior arrests for crack possession to prove defendant's intent and identity was not substantially outweighed by its prejudicial impact, especially where there was a limiting instruction); *United States v. Harris*, 223 F. App'x 747 (10th Cir. 2007) (finding no abuse of discretion in prosecution for possession with intent to traffic in cocaine base, in admitting evidence of defendant's prior arrests for drug offenses, as relevant to defendant's intent, knowledge, and lack of mistake, and to prove elements of charged offense); *United States v. Day*, 229 F.3d 1144, 2000 WL 1233586, at *5 (4th Cir. 2000) (unpublished) ("A criminal defendant, for example, cannot deny knowledge of drug trafficking or an intent to traffic in drugs and at the same time preclude the admission of the government's evidence of prior occasions when he willingly trafficked in drugs. We have held repeatedly that when intent to commit an act is an element of a crime, prior activity showing a willingness to commit that act may be probative").

would have very likely found that any error was harmless. This is because, given the considerable evidence against Petitioner here (such as the two pounds of cocaine found in a car he controlled, the firearms on his person and in his home, and the digital scales found in his home) there is no reason to believe that but for the alleged error, a different result would have been reached at trial. *See State v. Hernandez*, 188 N.C.App. 193, 204 (2008) ("To establish reversible error, a defendant must show a reasonable possibility that had the error not been committed a different result would have been reached at the trial.").

### D. Car Rental Receipt

Nor does the trial court's admission of a rental car receipt indicating that the vehicle was rented to Petitioner entitle him to federal habeas relief on the grounds that it was inadmissible hearsay. The objection was raised and summarily rejected at trial and the evidence was presented to the jury. (Docket Entry 15, Ex. 11 at 277-79.) However, evidence such as this has been deemed admissible to connect criminal defendants to a vehicle, so the best Petitioner could have hoped for here for was the admission of the evidence along with a limiting instruction stating the same.[9] Beyond this, even assuming the vehicle rental receipt was inadmissible hearsay, and that the trial court erred by letting it into evidence, Petitioner has failed to demonstrate any meaningful likelihood of prejudice. As mentioned above, there was a great deal of evidence of Petitioner's guilt regardless of the presence or absence of the

---

[9]  *See United States v. Peveto*, 881 F.2d 844, 853-54 (10th Cir. 1989) (traffic ticket admitted to tie defendant to van, not to prove truth of any matters asserted in the ticket; "[t]he existence of the ticket, not its assertions, was the point of its admission"); *United States v. Ashby*, 864 F.2d 690, 693 (10th Cir. 1988) (car title used to tie defendant to car, not to prove she was owner; work order documents admitted to inferentially tie defendant and co-defendant to drug running, not to prove truth of matters asserted therein; "[s]ince these documents were used to tie appellant to the car, they were not hearsay").

car rental receipt. Petitioner, who was armed, was apprehended with a car he clearly controlled containing two pounds of cocaine. Law enforcement testified that the cocaine was sticking out from under the driver's side seat and would have been visible to the driver and that a driver would "probably have [his] feet on it." (Docket Entry 15, Ex. 11 at 249-50.) Firearms and digital scales were found in Petitioner's home and the fact that Petitioner was arrested under relatively similar circumstances a number of months earlier was introduced at trial for a proper purpose. Had this issue been presented to the North Carolina Court of Appeals, there is no meaningful reason to believe that Petitioner would have prevailed on this argument.

### *Claim Three*

Petitioner's last claim is that appellate counsel's failure to present issues "in the defendant's Brief in a way [to] [e]nsure review constitutes ineffective assistance [of counsel]." (Docket Entry 1, Ground 3.) In this claim, Petitioner is apparently contending that appellate counsel failed to raise on appeal trial counsel's failure to file a notice of appeal from the suppression hearing and from the trial itself. Petitioner raised this issue in his second MAR and it was denied. (Docket Entry 15, Exs. 9-10.)

Claims of ineffective assistance of counsel on appeal are also judged using the *Strickland* test. *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983); *see also Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Ineffective assistance of appellate counsel can be shown by demonstrating that "counsel omitted significant and obvious issues while

24

pursuing issues that were clearly and significantly weaker." *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (citation omitted).

Here, as explained throughout the course of this Recommendation, there is no reason to believe that if appellate counsel raised this issue, it would have been successful in the North Carolina Appellate courts. Neither Petitioner's Fourth Amendment arguments, nor any other argument raised herein, has merit and counsel could not have prejudiced Petitioner for failing to raise a meritless claim on appeal. *See Foote v. Solomon*, No. 1:14CV877, 2015 WL 5674903, at *11 n.13 (M.D.N.C. Sept. 25, 2015).

## Conclusion

For the reasons set forth above, Petitioner's claims are without merit. Consequently, Respondent's motion should be granted and the Petition should be denied. An evidentiary hearing is not warranted in this matter.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 14) be **GRANTED**, that the Petition (Docket Entry 1) be **DENIED**, and that Judgment be entered dismissing this action.

Joe L. Webster
United States Magistrate Judge

January 14, 2016

25